IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Anna Norwood,                          :

      Plaintiff,                  :

  v.                                   :  Case No. 2:05-cv-0904

William (a/k/a Bill) Thompson,         :  MAGISTRATE JUDGE KEMP
et al.,
                                                   :

      Defendants.

OPINION AND ORDER

    Plaintiff, Anna Norwood, an employee of the Industrial Commission of Ohio, filed this action asserting federal and state law claims against ten defendants, eight of whom are employed by either the Industrial Commission or the Bureau of Workers Compensation, and two of whom are Ohio State Troopers.  Her nine separate causes of action arise out of an incident which occurred at her workplace on May 2, 2005.

    This case has been referred to the Magistrate Judge for full disposition under 28 U.S.C. §636(c).  Eight of the defendants have filed a motion to dismiss, which is now fully briefed.  For the following reasons, the motion will be granted.

I.

    When considering a motion to dismiss pursuant to Fed. R. Civ. P. l2(b)(6), a court must construe the complaint in the light most favorable to the plaintiff and accept all well-pleaded material allegations in the complaint as true. Scheuer v. Rhodes, 4l6 U.S. 232, 236 (l974); Roth Steel Products v. Sharon Steel Corp., 705 F.2d 134, 155 (6th Cir. l983).  When determining the sufficiency of a complaint in the face of a motion to dismiss, the court must apply the principle that "a complaint should not be dismissed for

failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). See also, McLain v. Real Estate Bd. of New Orleans, Inc., 444 U.S. 232 (1980); Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983), cert. denied, 469 U.S. 826 (1984).

A motion to dismiss under Rule 12(b)(6) is directed solely to the complaint itself. Roth Steel Products, 705 F.2d at 155. Consequently, the Court must focus on whether the claimant is entitled to offer evidence to support the claims, rather than whether the plaintiff will ultimately prevail. Scheuer, 416 U.S. at 236. A federal court cannot consider extrinsic evidence in determining whether a complaint states a claim upon which relief can be granted. Roth Steel Products, 705 F.2d at 155. The Court will grant a defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6) if the complaint is without merit because of an absence of law to support a claim of the type made, or of facts sufficient to make a valid claim, or if on the face of the complaint there is an insurmountable bar to relief indicating that the plaintiff does not have a claim. See generally Rauch v. Day & Night Mfg. Corp., 576 F.2d 697, 702 (6th Cir. 1978).

II.

The facts of this case will be summarized below, using the above legal standard. Of course, the facts are those set forth in the complaint and therefore constitute only Ms. Norwood's version of the events leading up to the workplace confrontation that took place on May 2, 2005.

Ms. Norwood has worked for the Industrial Commission of Ohio for 32 years. In 2004, defendant Jennifer Bishop became her

supervisor.  The two apparently did not get along well.  After suffering through what Ms. Norwood perceived to be a series of discriminatory actions taken by Ms. Bishop, resulting in the loss of significant job responsibilities, Ms. Norwood filed an EEO complaint against Ms. Bishop on April 14, 2005.  In that complaint, she alleged that Ms. Bishop had discriminated against her based upon her age and her medical disability.

Both Ms. Bishop and Ms. Norwood became aware that the EEO officer would issue a report on Monday, May 2, 2005.  The preceding Friday, April 29, 2005, another Industrial Commission employee told Ms. Bishop that Ms. Norwood had been "known to carry a gun."  Apparently, the purpose of that communication was to alert Ms. Bishop to the possibility that, if the EEO report were not to Ms. Norwood's liking, there might be trouble.  Although it is not entirely clear from the complaint, it can reasonably be inferred from the allegations that Ms. Bishop was also told that the time period during which plaintiff had been "known to carry a gun" was five years before.

On May 2, 2005, before the EEO officer issued her report, Ms. Bishop told defendant Donald Collins, a Human Resources Manager, that Ms. Norwood might be armed that day.  Mr. Collins called defendant Steve Johnson, a security officer employed by either the Industrial Commission or the Bureau of Workers Compensation, and relayed what Ms. Bishop had said.  Mr. Johnson told Mr. Collins to call the Ohio State Highway Patrol.  He did so, and two state troopers, defendants Miller and Franklin, arrived at the Industrial Commission office on West Spring Street sometime before the close of business.

At ten minutes to 5:00, Ms. Norwood was summoned to a conference room at the Industrial Commission.  She believed that she was going to be given the EEO officer's report.  However, when she arrived at the conference room, she was confronted by a

group of six people - the two State Troopers, Mr. Collins, and three other Industrial Commission employees, defendants Jo Skodis, Linda Ackley, and Tim Adams.  The troopers asked Ms. Norwood if she was armed.  She denied having a gun with her.  They then asked her to go to her work station, accompanied by an escort, to retrieve her purse.  She refused, but did agree to allow her purse to be brought to the conference room.  She was then presented with a consent form which, when signed, authorize the search of her purse.  Ms. Norwood signed the form.

In her complaint, Ms. Norwood claims that she did not sign the form voluntarily.  Rather, she asserts that she was coerced by the presence of six people, including two state troopers, into consenting to the search against her will.  Those present in the room searched her purse by dumping the contents onto the table.  When no gun was found, Ms. Norwood was permitted to gather her belongings and go home.  The complaint does not allege how long the questioning and search of Ms. Norwood's purse took.

Ms. Norwood claims to have suffered an emotional injury as a result of this incident.  Additionally, she asserts several state law claims related to a memo which Mr. Collins wrote after the incident.  She contends that the memorandum, which explained to others at the Industrial Commission what occurred, left out vital information and inaccurately described her as "upset" (which, in her view, meant "angry") instead of "emotionally traumatized."

### III.

Because the moving defendants have asked that the complaint be dismissed in its entirety, it is helpful to set forth in some detail the nine causes of action which Ms. Norwood pleads.  Five of her claims arise under federal law, and four are state law tort claims.

Ms. Norwood's first three claims are pleaded against all defendants except her supervisor, Ms. Bishop.  Claim One asserts

a §1983 cause of action for searching her property without probable cause and without obtaining a valid consent for the search. She also claims that the nine defendants named in that count failed to advise her of her constitutional rights and denied her equal protection under the laws. Count Two sets forth a conspiracy claim under 42 U.S.C. §1985(3) and Count Three asserts a negligent deprivation of civil rights.

Counts Four and Five are pleaded against seven of the ten defendants. William Thompson, the Chair of the Industrial Commission, Phillip Haddad, the Executive Director of the Industrial Commission, and Ms. Bishop are not named in Counts Four and Five. Count Four alleges the deprivation of a liberty interest without due process arising from Ms. Norwood's detention in the fifth floor conference room for what she describes as "an appreciable period of time" without either probable cause or reasonable suspicion to support the detention. Count Five alleges a substantive due process claim founded upon the same detention.

Ms. Norwood's first state law claim, Count Six, is a claim for intentional infliction of emotional distress. She has pleaded that claim against every defendant but Mr. Thompson and Mr. Haddad. Count Seven is a slander claim against both Mr. Collins and Ms. Bishop, and Count Eight is a libel claim against Mr. Collins based upon the memorandum which he wrote. The last claim in the complaint is a state law false imprisonment claim asserted against the six individuals who were present in the conference room while Ms. Norwood was questioned and searched.

IV.

The eight moving defendants have moved to dismiss the complaint on grounds that it does not state a federal constitutional claim or, in the alternative, that they are entitled to qualified immunity from suit. In deciding such a

5

motion, the Court must first determine if, utilizing the legal standards applicable to a motion to dismiss, the plaintiff has pleaded a violation of his or her constitutional rights.  If the complaint adequately pleads a constitutional violation, the Court must then determine whether the constitutional right in question was so clearly established at the time of the alleged violation that a reasonable public official would have appreciated that the plaintiff's rights were being violated.  See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996).  Consequently, the Court now addresses the initial question of whether the complaint states a claim for a violation of Ms. Norwood's constitutional rights which can properly be asserted in an action filed under 42 U.S.C. §1983.

A.

Ms. Norwood's primary constitutional claim is that her Fourth Amendment right to be free from unlawful searches and seizures was violated when her purse was searched without a warrant.  That Fourth Amendment protection has been incorporated into the due process clause of the Fourteenth Amendment and thereby made applicable to the States.  See Wolf v. Colorado, 338 U.S. 25 (1949), overruled on other grounds Mapp v. Ohio, 367 U.S. 643 (1961).  Although Ms. Norwood concedes in the complaint that she gave consent to the search, she contends that her consent was given under duress and was therefore invalid.  The question then becomes whether the complaint sets forth sufficient facts from which the Court could conclude that, indeed, Ms. Norwood did not give a valid consent to the six defendants present in the conference room on May 2, 2005 to search her purse.

As noted in United States v. Hearn, 496 F.2d 234 (6th Cir. 1974), which, in turn, relied upon the Supreme Court's decision in Schneckloth v. Bustamonte, 412 U.S. 218 (1973), whether the target of a search has given valid consent to search is

ordinarily a factual question to be determined from the totality of the circumstances.  According to Hearn, a non-exhaustive list of factors which the Court must consider in determining the validity of the consent includes the youth of the accused, his or her lack of education or intelligence, whether advice about the right to refuse consent was given, the length of the detention which preceded the giving of consent, the character of the questioning of the accused, and whether force or the threat of force was used in order to coerce the consent.  Viewing those factors together, the Court must determine whether the consent was given freely, unequivocally, specifically, and intelligently, uncontaminated by any duress or coercion.  United States v. Worley, 193 F.3d 380 (6th Cir. 1999).  Coercion or duress, which is what is alleged in this case, usually involves actual or threatened physical mistreatment, violence, threats, promises, inducements, deception, trickery, or the overbearing of the will of a party with limited mental capacity.  See, e.g., United States v. Pena-Sarabia, 297 F.3d 983, 987 (10th Cir. 2002).

     There are certain circumstances which, if present, clearly vitiate the giving of consent by the party to be searched.  For example, if the police make an unfounded threat to arrest a relative of the target of the search if consent is not forthcoming, the consent is not freely given.  United States v. Ivy, 165 F.3d 397 (6th Cir. 1998).  The same is true if the police falsely state that they possess a search warrant.  See Bumper v. North Carolina, 391 U.S. 543 (1968).  On the other hand, the mere show of force by police officers or the actual or perceived detention of the target does not make a consent invalid.  Thus, for example, when a defendant who was approached in an airport was removed to a stairwell and confronted by officers who requested and obtained consent to a search of his luggage, where the officers did not use any weapons, physical

7

touching, overbearing behavior, or threats of detention, the consent was valid.  United States v. Bueno, 21 F.3d 120 (6th Cir. 1994).  Even when an arrest has occurred, consent can be voluntarily given.  Simply being in police custody does not render a person incapable of validly consenting to a search.  Thompson v. City of Lawrence, 58 F.3d 1511, 1516 (10th Cir. 1995).

Here, Ms. Norwood does not allege that her consent was anything other than a clear grant of permission to search, rather than an equivocal consent which the defendants should have realized was insufficient under the Fourth Amendment.  Cf. United States v. Worley, supra, (consent expressed by the words "you got the badge, I guess you can [search]" was sufficiently equivocal to make the subsequent search unlawful).  She does not allege that the consent was general or non-specific, and it clearly related to the property to be searched.  She does not argue that she could not intelligently give consent to a search because of any lack of education or mental impairment.  She does not allege that any trickery or deception was used, that any unfounded threats against her or others accompanied the request to search, or that she was subjected to any violence or physical mistreatment or any threat of violence or physical mistreatment.  She does not allege that she was promised any benefit from the search which was not actually available, or that some other type of inducement was used in order to overcome her will.  Rather, the totality of her allegation concerning the lack of a valid consent is that she was called into a room and confronted by six people, four of whom were supervisors at her workplace and two of whom were state troopers, and asked to consent to a search.  She does not even allege that she was arrested or threatened with arrest.  Under the principles set forth above, there is nothing about this particular set of circumstances which would even

8

suggest that she could, if given the chance, prove that her consent to search was invalid because it was the product of coercion or duress. Further, the cases make clear that even if Ms. Norwood subjectively felt coerced into giving consent, so long as the circumstances would not have indicated to a reasonable state official, under an objective standard, that the consent was not freely given, no Fourth Amendment violation occurred.

    As the defendants argue, this case is similar in many respects to another case recently decided by this Court and affirmed by the Court of Appeals. See Aquino v. Honda, 158 Fed. Appx. 667 (6th Cir. 2005). Although that decision is unpublished, the Court finds its reasoning persuasive. There, the plaintiff, who was suspected of theft in the workplace, was subjected to a more intrusive search than the one here, namely a pat-down search. He contended that his apparent consent to that search was not freely given. The facts were more extreme than in this case because Mr. Aquino, although not arrested, was read his Miranda rights, he was not told that he was free to leave, and he was held for a much longer period of time than was Ms. Norwood. Further, he did not give a verbal consent to search, but rather simply placed himself against the wall after a police officer requested to pat him down. Although he testified that he felt compelled to submit to the officer's request, as the Court of Appeals noted, "the evidence demonstrates no genuine issue as to the lack of objective coercion in the encounter." Id. at 673. Consequently, the Court held that valid consent was given and no constitutional violation occurred.

    Ms. Norwood argues that because the defendants have simply moved to dismiss the complaint, the Court should give her the opportunity to collect evidence on the issue of whether her consent was freely given. As support for that assertion, she

9

notes that Aquino was decided in the context of a summary judgment motion. However, although Fed.R.Civ.P. 8(a) permits notice pleading, and when a motion is filed under Rule 12(b)(6) the Court must assume that all the well-pleaded allegations of the complaint are true, the Court concludes, based upon the above legal authority, that under the facts presented in the complaint, it would not be possible for Ms. Norwood to demonstrate that the consent which she gave to the defendants to search her purse was invalid, or that an objectively reasonable state actor who was aware of the facts as pleaded in the complaint would have reached that conclusion. In short, Ms. Norwood has simply failed to plead any facts which would give rise even to an inference that her consent to the search was invalid. Under those circumstances, she has not stated a Fourth Amendment and Fourteenth Amendment claim for unlawful search.

B.

The Court's conclusion that Ms. Norwood has not successfully pleaded a constitutional violation under the Fourth and Fourteenth Amendments for an unlawful search renders it unnecessary to consider whether, had such a violation been pleaded, the defendants nevertheless would be entitled to dismissal of the claims against them based upon qualified immunity. If no constitutional violation occurred, no reasonable state actor in the defendants' position could have believed, based upon clearly established law, that his or her actions violated Ms. Norwood's constitutional rights. Nevertheless, a brief note concerning the qualified immunity analysis is in order should it later be determined that the Court's ruling that the complaint fails to state a valid search claim is erroneous.

Public officials sued under 42 U.S.C. §1983 in their individual capacities may raise "qualified immunity" as a defense to the suit. That defense has been explained as follows:

10

> "[G]overnment officials performing discretionary
> functions, generally are shielded from liability for
> civil damages insofar as their conduct does not violate
> clearly established constitutional or statutory rights
> of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Conversely, "if the law was clearly established, the immunity defense should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19.

As explained in Dominique v. Telb, 831 F.2d 673 (6th Cir. 1987), when the defense of qualified immunity is raised, a plaintiff must include in the pleadings factual allegations necessary to support the conclusion that the defendants violated clearly established law. When the defense is raised by motion, "the District Court must decide the purely legal question of whether the law at the time of the alleged action was clearly established in favor of the plaintiff." Id. The Court's decision on this issue should indicate the law as the Court perceives it and the basis for its conclusion that the constitutional rights at issue were clearly established.

In order for a constitutional right to be clearly established, it is necessary that a decision of the Supreme Court, the highest Court of the state, or a Court of Appeals announce the constitutional principle. See Robinson v. Bibb, 840 F.2d 349 (6th Cir. 1988). A single, idiosyncratic decision from one Court of Appeals is not sufficient to establish clearly a constitutional right. Davis v. Holly, 835 F.2d 1175 (6th Cir. 1987).

> "Although official action is not necessarily protected
> by qualified immunity unless and until the very action
> in question has been held unlawful...an official is not
> bound to anticipate correctly possible future
> extensions of the law if the question of law was open
> at the time he acted."

Garvie v. Jackson, 845 F.2d 647, 652 (6th Cir. 1988).

Ordinarily, the Court must undertake a three-step analysis in determining whether qualified immunity applies. First, the Court should identify the specific constitutional right that the defendant or defendants allegedly violated. Second, the Court should determine whether, viewing the facts most favorably to the plaintiff, a violation of that right has been established. Finally, the Court should decide whether a reasonable state official would have known, at the time the action occurred and in light of the "clearly established law," that the plaintiff's constitutional rights had been violated. If so, qualified immunity is unavailable. See Dickerson v. McClellan, 101 F.3d 1151, 1157 (6th Cir. 1996).

The clearly established law in this Circuit is that not all consents to a search by state officials are valid. Consequently, if consent to search is accompanied by one of the prohibited police tactics described in the case law or is obviously the product of coercion or duress, state actors may violate the constitutional right to be free from unlawful searches even though words of consent have been spoken or written. As explained above, however, those are not the facts of this case.

Qualified immunity has been afforded to state actors who have obtained consents even when the circumstances suggesting coercion or duress have been more compelling than they are here. For example, in Valance v. Wisel, 110 F.3d 1269 (7th Cir. 1997), the party who had given an allegedly invalid consent to search had been removed from his car by three officers at gunpoint and escorted to a squad car. He was about to be handcuffed when, after being requested to do so by an officer, he consented to a search of the car. The court noted that plaintiff had cited no case "clearly establishing as of [the date of the search] that a consent to search would be deemed involuntary in circumstances

similar to those here." Id. at 1280.  The court also cited to multiple decisions where consents were deemed voluntary even after a suspect had an encounter with multiple armed police officers.  Id.  In both Valance v. Wisel and the cases cited therein, the primary basis of the claim that the consent was involuntary was the presence of multiple state officials (in that case, armed police officers) who, by their presence, allegedly intimated the suspect into giving an invalid consent to search.  The courts have consistently rejected the theory that such encounters invariably produce invalid consents.

     Similarly, in this case, the only coercive circumstances pleaded in the complaint are the presence of six state actors, including two police officers, in the conference room when Ms. Norwood was brought into the room and asked to consent to a search of her purse.  Whether or not her consent was valid, she has cited no case which clearly establishes as of the date of search here that her consent would be deemed involuntary simply because she was outnumbered by state officials, some of whom were police officers.  In fact, the Court has been unable to locate a single case holding, under similar circumstances, that a consent to search similar to the one granted by Ms. Norwood was invalid.  Consequently, it simply cannot be said that the defendants should have been aware when they searched Ms. Norwood's purse that, based upon clearly established law, her consent had not been freely given.  Under those circumstances, they are each entitled to qualified immunity from the claim pleaded in Count One.

C.

     Although the Fourth Amendment search claim is Ms. Norwood's primary claim, she does allege claims under other federal constitutional provisions, including the substantive due process clause of the Fourteenth Amendment.  She also asserts a claim for negligent deprivation of constitutional rights, for detention

13

without probable cause or reasonable suspicion, and for conspiracy under 42 U.S.C. §1985(3).  None of these claims can withstand a motion to dismiss.

First, any claims arising from the factual allegations in the complaint and based upon negligence are not actionable under §1983.  The Supreme Court made it clear in Daniels v. Williams, 474 U.S. 327 (1986) that the negligent deprivation of liberty or property by state actors is not actionable under the due process clause because that clause was intended to foreclose only intentional governmental action.  Similarly, a claim for the deprivation of rights secured by the Fourth Amendment, which are incorporated into the due process clause of the Fourteenth Amendment, cannot be supported by an allegation of mere negligence.  Schulte v. City of Dodge City, 630 F. Supp. 327 (D. Kan. 1986); see also Smith v. Busby, 2006 WL 328368 (8th Cir. Feb. 14, 2006).

With respect to Ms. Norwood's substantive due process claims, it is clear that those claims are predicated upon conduct which, if actionable, would be violative of the Fourth Amendment.  As the Supreme Court held in Graham v. Connor, 490 U.S. 386 (1989), the substantive due process clause is not a "catch-all" clause under which constitutional claims of any nature can be asserted.  Rather, if a claim is covered by a specific constitutional provision, it is analyzed under the law applicable to that provision rather than under the more general contours of the substantive due process clause.  See also Darrah v. City of Oak Park, 255 F.3d 301 (6th Cir. 2001).  That is the case here.

Ms. Norwood also alleges a conspiracy claim under 42 U.S.C. §1985(3).  First, that claim fails because, in the absence of a sustainable allegation of a violation of constitutional rights, there can be no claim for conspiracy to violate the same rights.  Further, a claim under §1985(3) requires an allegation of class-

14

based animus.  Kush v. Rutledge, 460 U.S. 719, 725 (1983).  The complaint does not contain such an allegation.

Finally, Ms. Norwood attempts to state a claim, presumably under the Fourth and Fourteenth Amendments, for unlawful detention.  As she has pleaded this claim, however, she was simply summoned to a conference room during the work day in order to meet with work place officials.  Superiors in the workplace, even if they work for the State, need neither reasonable suspicion nor probable cause to summon an employee to a meeting and to require the employee's continued attendance at that meeting as long as it takes place within regular business hours.  To hold otherwise would turn every unwanted conference in the work place into an actionable Fourth Amendment seizure.  Ms. Norwood makes no allegation concerning the length of time during which she was required to remain in the conference room and meet with her supervisors, nor does she allege that she was ever prohibited from leaving.  Under those circumstances, she simply has not stated a Fourth and Fourteenth Amendment seizure claim.

V.

Ms. Norwood has also pleaded a number of claims against the moving defendants under state law.  Although the Court has discretion to retain jurisdiction over these claims even after all of her federal claims against the moving defendants are dismissed, it chooses not to exercise that discretion here.  The state law claims are in some cases dissimilar to the remaining federal law claims against Troopers Miller and Franklin, and the viability of Ms. Norwood's federal claims against those two defendants is certainly questionable based on this Opinion and Order.  Consequently, her state law claims against the moving defendants will be dismissed without prejudice.

VI.

Based upon the foregoing, the motion filed by the eight

15

moving defendants to dismiss (doc. #3) is granted.  All of the claims against defendants Thompson, Haddad, Collins, Skodis, Ackley, Adams, Johnson, and Bishop asserted under federal law are dismissed with prejudice for failure to state a claim.  All of the claims against those defendants pleaded under state law are dismissed without prejudice.


/s/ Terence P. Kemp
United States Magistrate Judge